HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| OLUF VEDOY; KURT VEDOY; VEDOY ENTERPRISES, INC., a Washington corporation; and O.K. FISHERIES, INC., a Washington corporation,<br><br>Plaintiffs,<br><br>v.<br><br>DANIEL MATTSEN and JANE DOE MATTSEN, his wife and their marital community,<br><br>Defendants. | Case No.  C05-5566 RBL<br><br>ORDER |

This matter comes before the Court on Defendants' Motion for Summary Judgment and Motion for Rule 11 Sanctions.  The Court has reviewed the materials submitted by the parties and for the reasons stated below, **GRANTS** the Motion for Summary Judgment [Dkt. #14], and **DENIES** the Motion for Rule 11 Sanctions [Dkt. #18] and **DENIES** as moot Plaintiffs' Motion Re: Allowing Time [Dkt. #28].

STATEMENT OF FACTS

The facts relevant to the current controversy are not disputed.  In September 2003, several individuals formed Shaman Fishing, LLC ("Shaman").  Defendant Daniel Mattsen was Shaman's Managing Member.  In October 2003, Shaman purchased two loans from Key Bank which were secured by preferred ship mortgages on plaintiffs' fishing boat, the F/V BLUE FIN.  In January 2004, Shaman filed a complaint to foreclose the preferred mortgages on the BLUE FIN.  The Vedoys and their corporate entities ("Vedoy") asserted affirmative defenses and counterclaims against Shaman.

In May of 2005, the parties participated in a mediation presided over by Judge Gerard Shellan, of Judicial Arbitration and Mediation Service (JAMS). The dispute was settled on May 18, 2005 with the parties agreeing that the settlement was:

> [A] full, final, global settlement settling any and all claims between or among the parties, all counterclaims, crossclaims of every type or nature from the beginning of time to eternity! This provides for the dismissal of the lawsuit with prejudice and without cost to either party. It provides for the settlement of all claims involving all parties including third party defendants of every type and nature and provides for appropriate mutual releases.

Exh. C to Decl. of Jerry R. McNaul [Dkt. #15]. The agreement also contained a provision giving Judge Shellan authority as an arbitrator to render a "binding resolution" of any dispute arising over "the preparation of the documents or in the implementation of the agreement." Exh. C to Decl. of Jerry R. McNaul [Dkt. #15]. Shaman was represented at the mediation by its Managing Member, Daniel Mattsen, who assented to the settlement on Shaman's behalf.

On the basis of the settlement, the parties entered into a Stipulation for Entry of Order of Dismissal and Disbursement that dismissed all claims with prejudice. A copy of the mediation transcript was attached to the Stipulation and incorporated by reference. The Order was signed by Judge Lasnik on May 25, 2005.

In July 2005, the current lawsuit was filed. In this action the Vedoy plaintiffs have asserted the same claims against Daniel Mattsen that they asserted as counterclaims against Shaman in the previous lawsuit.[1] No one challenges the representation that Mattsen, at all relevant times, was acting in his official capacity of managing member of Shaman. Nevertheless, the Vedoy plaintiffs take the position that because Mattsen was not released by name in the settlement, the current iteration of the same lawsuit is legitimate. Decl. of Jerry R. McNaul, para. 3, [Dkt. #13]. They are wrong.

Judge Shellan acted as arbitrator pursuant to the terms of the agreement. He rendered a "binding resolution" of the dispute when he concluded that the action against Daniel and "Jane Doe" Mattsen involved the same issues, the same vessel and the same fishing rights which were the seminal issues in the lawsuit settled by the May 18, 2005 Agreement. That Agreement was intended by the parties as a global settlement of the dispute. Judge Shellan noted that: "at no time during the mediation process either in joint

---

[1] Vedoy claimed, then and now, that Shaman, by including the fishing licenses and fishing permits in the foreclosure action, "improperly clouded the title to the Fishing Rights . . ." thereby causing damage to Vedoy. See Answer, Affirmative Defense and Counterclaim, Cause No. C04-0036L [Dkt. #18] and Complaint for Damages [Dkt. #1-2] to this action.

ORDER
Page - 2

or separate caucus did any party or counsel ever raise any issue or infer or express any desire that the settlement was meant to exclude some of . . . the parties or persons present or that any future litigation on the same issues was in the offing . . . ." Judge Shellan concluded that: "the parties present were all released as agents, directors, representatives, of any LLC entity." Exh. E to Decl. of Jerry R. McNaul [Dkt. #15].

From the foregoing it is clear to this Court that there are no genuine issues of material fact and defendants are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The individuals, the entities and the principals of the entities which were parties to the first lawsuit were all released in the settlement agreement of any and all claims between or among them. Judge Shellan reached that conclusion as the arbitrator authorized to resolve all disputes arising out of the implementation of the settlement agreement.

Arbitration clauses are highly favored under Washington state law and under federal law. *Perez v. Mid-Century Ins. Co.,* 85 WN. App. 760 (1997); *Hoffman v. Aaron Kamhi, Inc.,* 927 F. Supp. 640 (S.D.N.Y. 1996). Settlement agreements are contracts that a federal court interprets by looking at the contract law of the state in which it sits. *Jeff D v. Andrus,* 899 F.2d 753, 759 (9th Cir. 1990). Washington law on contract interpretation directs a court's attention to "the objective manifestations of the agreement, rather than on the unexpressed subjective intent of the parties." *Hearst Communications, Inc. v. Seattle Times Co.,* 154 Wn.2d 493, 503 (2005). The decision of Judge Shellan was not only well within the scope of his authority, it was based upon sound legal principal. Where an authorized arbitrator renders a decision on a matter within the scope of his authority, that decision is entitled to preclusive effect.

Moreover, the claims raised in the current lawsuit were raised or could have been raised in the prior action before Judge Lasnik and are therefore barred by the doctrine of res judicata. *Montana v. United States*, 440 U.S. 147, 153 (1979).[2]

Finally, with regard to Rule 11 Sanctions, the Court declines to award sanctions as requested by defendants. The Court hastens to add, however, that under the circumstances of this case, an imposition of sanctions would be wholly justified. In the opinion of this Court, there is no judge, in either state or federal court, that would view the current lawsuit as anything but frivolous. The plaintiffs settled the prior lawsuit

---

[2] The elements of res judicata are: (1) an identity of claims; (2) a final judgment on the merits; and (3) identity or privity between the parties. *Blonden-Tongue Labs v. Univ. of Ill. Found.,* 402 U.S. 313, 323-24 (1971). Here, the claims by Vedoy are the same, those claims were dismissed in the first case with prejudice; and the defendant here was in direct privity with the entity (Shaman) that was dismissed by Vedoy in that action.

which involved the claims they now assert against Defendant Mattsen. During the entirety of the settlement negotiations they were bargaining with Defendant Mattsen. At no time did they reveal their secret plan to settle with the entity through which Mattsen operated, only to turn around and sue Mattsen, individually, on the same claim. In retrospect, the conduct of the Vedoys during the negotiations was unethical and improper. The inability of the lawyer to control his clients was regrettable. The lawyer's belief that the legitimacy of his conduct and that of his clients in pursuing the current lawsuit was somehow impacted by forum selection is incredible. Nevertheless, this Court will not impose sanctions against the Vedoy plaintiffs or their former attorney. The Court is satisfied that a valuable lesson can be learned by Mr. Woodbery and his clients without the imposition of sanctions. With respect to the added cost incurred by defendant Mattsen because of plaintiffs' antics, it should simply be chalked up as an added cost of doing his chosen business.

Dated this 12th day of December, 2005.

_/s/ Ronald B. Leighton_
RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE